## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **KIMBERLEY SCOTT,** | : |
| Plaintiff, | : |
| | : Civil Action No.: 3:18-cv-01441-AWT |
| v. | : |
| **THE WALT DISNEY COMPANY AND FIDELITY WORKPLACE SERVICES, LLC,** | : |
| Defendants/Counterclaimants, | : |
| v. | : |
| **CHARLES S. SILVER, as Co-Trustee of The Stuart O. Scott Family Trust Dated September 19, 2013, SUSAN SCOTT, as Co-Trustee of The Stuart O. Scott Family Trust Dated September 19, 2013, THE STUART O. SCOTT FAMILY TRUST DATED SEPTEMBER 19, 2013, AND KIMBERLEY SCOTT,** | : March 14, 2019 |
| Counterclaim Defendants. | : |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS/COUNTERCLAIMANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Kimberley Scott ("Plaintiff") was married to ESPN sportscaster Stuart O. Scott (the "Deceased"). They divorced before he died. During his employment with ESPN (an affiliate of Disney) and up until his death, the Deceased was a participant in the Disney Savings and Investment Plan (the "Plan"), a 401k plan governed by the Employee Retirement Income Security Act ("ERISA"). Plaintiff claims in this action that the Plan Defendants violated ERISA by denying her "entitlement to benefits" under the Plan based on a domestic relations order she obtained in connection with their divorce ("DRO"). (Compl. at ¶¶ 7, 14[1]).

Many months prior to receiving the DRO, the Plan Defendants[2] processed the Deceased's beneficiary designation and transferred the assets in the Deceased's Plan account ("Plan Account") to an account owned by the Deceased's named beneficiary: the Stuart O. Scott Family Trust Dated September 19, 2013 (the "Trust").[3] The Plan Defendants acted lawfully in processing the beneficiary designation and in transferring ownership of the assets in the Plan Account to an account owned by the Trust. Additionally, the DRO may not now be honored against the Trust.

---

[1] References to Plaintiff's Complaint, filed on August 24, 2018 (Dkt. No. 1), are cited as "Compl. at ¶ [paragraph number]."

[2] For purposes of this motion only, the Plan Defendants attribute all actions to themselves jointly. This should not be taken as an admission that both Defendants actually engaged in the actions described in this motion jointly.

[3] Defendants' file their motion for summary judgment on this single issue because it resolves the case in its entirety. Defendants note, though, that there are additional grounds upon which they could seek dismissal via a motion for judgment on the pleadings, including (i) that Plaintiff does not have standing to assert a cause of action under ERISA because she is not a participant or beneficiary in the Plan, (ii) even if Plaintiff had standing to sue, Defendants actions were in accordance with the Plan terms, (iii) Plaintiff's claims are subject to dismissal because she has failed to exhaust administrative remedies, and (iv) neither Disney nor Fidelity are not proper parties to this action. Further, Defendants are entitled to default judgment against the Counterclaim Defendants on their interpleader claim because they have not filed responses to the Answer and Amended Interpleader to date (Dkt. No. 23).

## II. STATEMENT OF RELEVANT FACTS AND PROCEDURAL BACKGROUND

On October 14, 2014, the Deceased designated the Trust as the beneficiary of his Disney 401(k) Account.  (Harris Decl., ¶ 4, Exs. A and B[4]; *see* Compl. at ¶ 8; Answer at ¶ 8[5]).  The Plan Defendants learned that the Deceased died on or about January 4, 2015.  (Harris Decl., ¶ 5; Answer at ¶ 7; *see* Compl. at ¶ 7).   The Plan Defendants transferred the assets in the Account to a new account within the Plan owned by the Trust on February 23, 2015.  (Compl. at ¶ 8; Harris Decl., ¶ 6, Exs. D and E).

Many months later, Fidelity received the DRO; it was captioned "Kimberley Scott v. Stuart Scott" and entitled "Qualified Domestic Relations Order (Savings & Investment Plan)" and appeared to be signed by a judge of the Hartford Superior Court on or about September 22, 2015. (Harris Decl., ¶ 8, Ex. H).[6]  Fidelity responded to Plaintiff's attorney acknowledging receipt of the DRO and advising Plaintiff that the assets in the Account had already been transferred to the beneficiary.  (*Id.*, Ex. I).

## III. LEGAL STANDARD

A motion for summary judgment is properly granted where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. § 56(a); L. R. Civ. P. § 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

---

[4] References to the Declaration of Jeffrey E. Harris, dated March 14, 2019, are cited as "Harris Decl., ¶ [paragraph number], Ex. [exhibit letter]).

[5] References to the Answer portion of Defendant's Answer and Amended Interpleader, filed on December 11, 2018 (Dkt. No. 23, pp. 1-6), are cited as "Answer at ¶ [paragraph number]."  References to the Amended Interpleader portion of Defendant's Answer and Amended Interpleader (*Id.*, pp. 6-9), are cited as "Am. Interpleader at ¶ [paragraph number]."

[6] In or about 2013, Fidelity received a letter from an attorney for the Deceased dated May 17, 2013, which stated that the attorney represented the Deceased in the dissolution of his marriage in 2007, and that, pursuant to the judgment in the divorce proceeding "certain retirement assets . . . are to be transferred to Mr. Scott's former wife." (Harris Decl., Ex. J).  The letter then requested, among other things, "available information with respect to processing of Qualified Domestic Relations Orders."  (*Id.*).  Fidelity responded to the Deceased's attorney via letter dated May 31, 2013, which provided, among other things, a website address for locating Fidelity's Qualified Domestic Relations Order Guidelines.  (*Id.*, Ex. K).  Fidelity did not receive a DRO until over two years later.  (*Id.*, ¶ 11).

(1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The moving party has the initial burden of demonstrating that there is no genuine issue of material fact to be decided. *See Celotex Corp.*, 477 U.S. at 323.  As to any issue on which the moving party does not have the ultimate burden of proof, the moving party may satisfy its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  If the moving party satisfies its initial burden, "the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists." *Weg v. Macchiarola*, 995 F.2d 15, 18 (2d Cir. 1993).  A plaintiff may not rely on conclusory statements or mere contentions that the evidence in support of summary judgment is not credible.  *See D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), cert. denied, 524 U.S. 911 (1998).  The non-moving party must come forward with more than the "mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252.

## IV. ARGUMENT

### The DRO, Presented Long After The Plan Defendants Processed The Beneficiary Designation, Cannot Now Be Honored.

The Plan must be administered in accordance with the Plan terms and ERISA. *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013) (the administrator's duty is to see that the plan is "maintained pursuant to [that] written instrument") (quoting 29 U.S.C. § 1102(a)(1)).  *Cf. Egelhoff v. Egelhoff*, 532 U.S. 141 (2001) (recognizing "ERISA's requirements that plans be administered, and benefits be paid, in accordance with plan documents.").

The Plan requires distribution of the assets in a participant's account to a named beneficiary upon the death of the participant. (Flessner Decl., Ex. A, Art. 8, ¶ 8.03(a)[7]).  It is undisputed that

---

[7] References to the Declaration of Todd Flessner, dated March 13, 2019, are cited as "Flessner Decl., ¶ [paragraph number], Ex. [exhibit letter]).

3

when the Deceased died in January 2015, the Trust was his designated beneficiary.[8] (Harris Decl., ¶ 4, Exs. A and B; *see* Compl. at ¶ 8; Answer at ¶ 8). There can be no dispute, then, that the Plan Defendants followed the terms of the Plan (and, therefore, ERISA) in transferring the assets in the Deceased's Account to an account set up for the Trust in February 2015. (*See id.*, ¶ 6, Exs. D and E).

ERISA contains an aptly named "anti-alienation" provision that prohibits alienation of funds in a retirement plan from its owner, 29 U.S.C. § 1056(d)(1). ERISA's anti-alienation provision contains a very narrow exception that allows alienation of a participant's benefits pursuant to "a qualified domestic relations order," 29 U.S.C. § 1056(d)(3)(A). In order for a Domestic Relations Order to be a *Qualified* Domestic Relations Order, the Order must, among other things, give an alternate payee (such as a former spouse) the right to "receive all or a portion of the benefits payable with respect to a *participant* under a plan." 29 U.S.C. § 1056(d)(3)(B)(i)(I) (emphasis added).

Since February 2015, the assets that had previously belonged to the Deceased have been in an account owned by the Trust. (*See* Harris Decl., Ex. E). Under ERISA, the Trust is a "beneficiary,"[9] not a "participant."[10] The DRO could never become "Qualified" within the meaning of ERISA as to the Trust, because the Trust is not a participant. Instead, it is a

---

[8] The online method for submitting a beneficiary designation is permissible under ERISA. "ERISA has no explicit requirements for how plans allow participants to select their beneficiaries." *Williams v. Allstate Ins. Co.*, No. 16-cv-6696, 2018 U.S. Dist. LEXIS 59650, at *12 (N.D. Ill. Apr. 9, 2018) (citing *Davis v. Combes*, 294 F.3d 931, 940 (7th Cir. 2002)). "Where . . . a plan has 'liberal mechanisms for changing beneficiaries,' such as an online portal, strictly enforcing the plan means allowing participants to change their beneficiaries through those liberal mechanisms." *Williams*, 2018 U.S. Dist. LEXIS 59650, at *12 (quoting *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 552 (7th Cir. 1997)). *Cf. Metro. Life Ins. Co. v. Brown*, No. 14-CV-12005, 2015 U.S. Dist. LEXIS 162075 (E.D. Mich. Dec. 3, 2015) (finding one of two online beneficiary designations to be valid).

[9] ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

[10] ERISA defines a "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit . . . from an employee benefit plan . . . or whose beneficiaries may be eligible to receive any such benefit. 29 U.S.C. § 1002(7).

beneficiary.[11]  *See Hopkins v. AT&T Global Information Solutions Co.*, 105 F.3d 153, 155-56 (1997) (a domestic relations order must relate to a benefit payable with respect to a participant in order to be qualified, and consequently, may not relate to a benefit payable with respect to a beneficiary).

Of course, the DRO has no current effect with respect to the Deceased's account (even though he had been a participant in the Plan when he was alive) because the Deceased (including his Estate) has not held any assets in the Plan since his beneficiary designation was effectuated in February 2015.  (*See* Harris Decl, Ex. D).

Thus, the Plan Defendants acted in accordance with ERISA and the Plan terms in processing the Deceased's beneficiary designation form.  The Plan Defendants also acted properly in refusing to apply the DRO to the account owned by the Trust, and in concluding that the Deceased no longer owned any assets in the Plan at the time the Plan Defendants were presented with the DRO many months later.  Therefore, the Court should enter judgment in their favor.

Finally, the Court should grant the Plan Defendants' Interpleader Claim and dismiss them from the action.[12]  *See Marcus v. Dufour*, 796 F. Supp. 2d 386, 390 (E.D.N.Y. 2011), aff'd sub nom. *Marcus v. Haaker*, 481 F. App'x 19 (2d Cir. 2012) ("Generally, once an interpleader plaintiff

---

[11] Also, ERISA sets forth certain requirements for a Qualified Domestic Relations Order, including, among other things, that the Order must "specif[y] . . . that name and the last known mailing address . . . of the participant . . . [and] . . . the amount or percentage of the participant's benefits to be paid by the plan." 29 U.S.C. § 1056(d)(3)(C). *See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 302 fn12 (2009) (same).  The assets are in an account owned by the Trust.  Even setting aside for a moment that the Trust is not a "participant" under ERISA, the DRO does not specify the Trust or an amount or percentage of the Trust's assets to be paid, which is an additional reason that the DRO could not become "Qualified" under ERISA as to the Trust.

[12] Alternatively, the Court could conclude that, as a matter of law, that a consequence of entering judgment in the Plan Defendants favor is necessarily a finding that the Trust is the rightful owner of the Deceased's account, and dismiss the interpleader action as well.  While the Plan Defendants have no stake in who the ultimate owner of the account is, the Plan Defendants do wish to be spared further involvement in the underlying parties' dispute.  Said another way, the Plan Defendants do have a stake in seeing the litigation come to a final conclusion.

has satisfied the jurisdictional requirements of an interpleader claim, the Court will discharge the plaintiff from liability and dismiss him from the case.") (citing *New York Life Ins. Co. v. Connecticut Dev. Auth.*, 700 F.2d 91, 95 (2d Cir. 1983)). *See also Fidelity Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 182-183 (S.D.N.Y. 2002) (granting similar relief where interpleader was proper and plaintiff acted in good faith); *Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 541-42 (S.D.N.Y. 2010) (noting interpleader plaintiffs should be discharged from action "and amply protected from liability to third parties").[13]

## V. CONCLUSION

For all of the foregoing reasons, and as demonstrated by the uncontrovertable evidence that Defendants have submitted in support of their Motion for Summary Judgment, the Plan Defendants respectfully request that this Court enter judgment in their favor.

Should the Court grant Defendants' motion for summary judgment, Defendants request leave to file a motion for attorney's fees in accordance with Fed. R. Civ. P. 54, Section 502(g) of ERISA, 29 U.S.C. § 1132(g), and Conn. Gen. Stat. § 52-484.

---

[13] Further, because dismissal is warranted based on Defendants' Counterclaim for Interpleader, Defendants should be awarded attorney's fees and costs. Conn. Gen. Stat. § 52-484. *See Weininger v. Castro,* 462 F. Supp. 2d 457, 501 (S.D.N.Y. 2006) ("Attorney's fees and costs are generally awarded to a disinterested stakeholder who has expended time and money participating in a dispute not of his own making and the outcome of which has no impact on him.") (internal quotation marks omitted).

                */s/  Darren E. Nadel*
Darren E. Nadel, Esq., *Admitted Pro Hac Vice*
Littler Mendelson, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Phone: 303.629.6200
Fax: 303.629.0200
Email: dnadel@littler.com

      -and-

Pamela S.C. Reynolds, Esq., *Admitted Pro Hac Vice*
375 Woodcliff Drive
Suite 2D
Fairport, NY  14450
Telephone: 585.203.3400
Facsimile: 585.203.3414
preynolds@littler.com

      -and-

Elizabeth R. McKenna (ct28113)
One Century Tower
265 Church Street, Suite 300
New Haven, CT 06510
Telephone: 203.974.8714
Facsimile: 203.974.8799
Email: emckenna@littler.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2019, a copy of the foregoing was filed electronically and served by mail on anyone known to be unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                                                          */s/ Darren E. Nadel*
                                                                          Darren E. Nadel

LITSECURE:300188180.6 083293.1038